IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> v. ) <br> ) <br> JAMES ALBERT TRANKLE, ) <br> ) <br> Defendant ) <br> ) <br> ) <br> ) <br> ) | CRIMINAL NO. 21-CR-00675 |

## EXPERT REPORT OF MICHAEL M. DASHIELL, CPA, CFE, PI

**TABLE OF CONTENTS**

I.      QUALIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3 - 4

II.     MATERIALS REVIEWED AND/OR RELIED UPON . . . . . . . . . . . . 4 - 5

III.    ASSIGNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 - 8

VI.     PUBLICATIONS AND PRIOR TESTIMONY . . . . . . . . . . . . . . . . . . 8

VII.    COMPENSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     **QUALIFICATIONS**

My name is Michael M. Dashiell. I am the Director at Forensic Accounting Experts, LLC (FAE), an independent forensic accounting firm based in Norfolk, Virginia, and have held this position since December 1, 2020. My areas of expertise include conducting complex financial investigations, corporate internal investigations, litigation support for civil and criminal matters, discovery review and analysis, witness interviews, and sensitive employee background investigations. While with FAE, I have directed forensic accounting investigations in such areas as embezzlement, tax fraud, bank fraud, trust valuation, investment fraud, wire fraud, interstate transportation of stolen property, conspiracy, trademark infringement, corporate internal investigations, capital murder, and will and probate matters, including providing forensic accounting litigation support in civil and criminal cases in both federal and state courts.

Previously, I served for 25 years as a Supervisory Special Agent and Special Agent with the Federal Bureau of Investigation (FBI) at its Norfolk, Virginia field office, at FBI Headquarters in Washington, D.C., and at the U.S. Northern Command in Colorado Springs, Colorado where I oversaw hundreds of complex financial investigations in matters involving bank fraud, fraud against the government, corruption, health care fraud, mail fraud, wire fraud, credit card fraud, insurance fraud, money laundering, mortgage fraud, and other areas.

I received a Bachelor of Science in Applied Science from the United States Naval Academy in Annapolis, Maryland, and a Master of Science in Accounting from Old Dominion University in Norfolk, Virginia.

I have received numerous awards and commendations from the FBI, the U.S. Department of Justice, and the U.S. Department of Defense, including the Joint Civilian Service Commendation Medal. I also hold several certifications, including Certified Public Accountant

3

(CPA) and Certified Fraud Examiner (CFE).

Prior to embarking on my professional career in forensic accounting, I served as an officer in the United States Navy in numerous leadership capacities aboard the USS LaMoure County (LST-1194) and on an exchange tour with the Royal Navy as the U.S. Naval Liaison Officer, Divisional Officer and Instructor at the Britannia Royal Naval College in Dartmouth, England. I was honorably discharged from Active Duty and served several years in the U.S. Naval Reserves.

II.     **MATERIALS REVIEWED AND/OR RELIED UPON**

In preparation for rendering my opinions in this matter, I have reviewed and/or relied upon the following materials:

- Indictment filed 11/16/2021 (8 pages)

- BB&T Bank Records for Disabled and Paralyzed Veterans Fund, account number 59572058, including copies of the signature card agreement, monthly statements, deposit and withdrawal tickets, checks, and account and transaction histories (2320 pages)

- First National Bank Records for RBC Restaurant Buyers Network Inc, account number 7311, including copies of the signature card agreement, monthly statements, deposit and withdrawal tickets, and checks (175 pages)

- PNC Bank Records for Capitol Hill Advocate, account number 5829, including copies of the account registration and agreement, monthly statements, deposit and withdrawal tickets, and checks (55 pages)

- Severn Savings Bank Records for RBC Restaurant Buyers Network Inc, account number 70717, including copies of the new account agreement, monthly statements, deposit and withdrawal tickets, and checks (259 pages)

- SunTrust Bank Records for Restaurant Buyers Club Society, D/B/A Police Crimeline Magazine, account number 197864563, including copies of the business account signature card, a client profile review, monthly statements, deposit and withdrawal tickets, and checks (113 pages)

- SunTrust Bank Records for Restaurant Buyers Club Society, account number 9018, including the bank signature card, monthly statements, cashier's check, checks (8 pages)

4

- Wells Fargo Bank Records for Capitol Hill Advocate, account number 516747, including the business account application, monthly statements, deposit tickets, and checks (71 pages)
- Deposit Analysis Chart
- Withdrawal Analysis Chart
- Verdict Form dated May 15, 2023

### III. ASSIGNMENT

I was asked by counsel for the defendant to review bank records of various bank accounts pertaining to the defendant, his companies and/or charities, and to calculate the total loss amount the defendant was responsible for as a result of the fraudulent conduct he was charged with and found guilty for at trial. The bank records were provided to me electronically by counsel.

### IV. BACKGROUND

From my review of the Indictment, the Verdict Form, and from my discussions with defense counsel, I understand the defendant was charged with and convicted at trial for one Count of Conspiracy to Commit Mail Fraud and Bank Fraud and five Counts of Bank Fraud. I understand the defendant solicited donations from individuals and restaurant business owners and received those donations by check or money order. He then deposited these checks and money orders into various bank accounts he controlled. I further understand the defendant used the donors' information from those checks including their name, bank account number and bank routing number to print checks which he later deposited into bank accounts he controlled. He did this without the knowledge or authorization from the donors.

### V. ANALYSIS

My review and analysis of the bank documents provided to me by defense counsel is set forth below:

5

1. <u>SunTrust Bank Account 4563</u>

    I reviewed the checks and money orders deposited into this account. The deposit tickets totaled $2,785.00. Two of the money orders totaling $195.00 were from James Trankle and made payable to "NC DMV," and included a note on the reverse side of the money orders which stated, "not used for purposes intended." These money orders were included with the deposit tickets however were not from any of the donors, therefore should not be included in the loss amount. The monthly bank statement dated 11/30/2017 showed four deposited items that were returned to the payors' banks, totaling $105.00. As these returned items were deducted from the defendant's bank account and returned to the payors' banks, these amounts should not be included in the loss. I calculated the actual loss amount by subtracting $195.00 and $105.00 from the deposited amount of $2,785.00 which resulted in a loss of $2,485.00.

2. <u>Severn Savings Bank Account 0717</u>

    I reviewed the checks deposited into this account which totaled $24,950.00. One of those was a cashier's check in the amount of $100.00 which was not identifiable with a donor so I deducted this check from the total which came to $24,850.00. I reviewed the monthly bank statements and identified the deposited checks which were returned to the payors' banks which totaled $8,910.00. As these returned items were deducted from the defendant's bank account and returned to the payors' banks, these amounts should not be included in the loss. I calculated the actual loss amount by subtracting $8,910.00 from $24,850.00 which resulted in a loss of $15,940.00.

3. <u>PNC Bank Account 5829</u>

    I reviewed the three checks deposited into this account which totaled $1,485.00. There were no deposited checks returned to the bank therefore the loss amount was $1,485.00.

4. <u>First National Bank Account 7311</u>

I reviewed the checks deposited into this account which totaled $77,270.00. I reviewed the monthly bank statements and identified deposited checks which were returned to the payors' banks which totaled $31,185.00. As these returned items were deducted from the defendant's bank account and returned to the payors' banks, these amounts should not be included in the loss. I calculated the loss amount by subtracting $31,185.00 from the deposited amount of $77,270.00 which resulted in a loss of $46,085.00.

5. <u>Wells Fargo Bank Account 6747</u>

I reviewed the checks deposited into this account which totaled $17,325.00. I reviewed the monthly bank statements and identified deposited checks which were returned to the payors' banks which totaled $7,425.00. As these returned items were deducted from the defendant's bank account and returned to the payors' banks, these amounts should not be included in the loss. I calculated the loss amount by subtracting $7,425.00 from the deposited amount of $17,325.00 which resulted in a loss of $9,900.00.

6. <u>BB&T Bank Account 2058</u>

I reviewed the checks and related deposit tickets for this account which totaled $66,453.00. One check in the amount of $4,000.00 was from RBC Restaurant Buyer Network, which is the defendant's company. Since this deposit was not from a donor but from the defendant's company it should be deducted from the total deposit amount. I also identified two cash deposits totaling $330.00 which should be deducted from the total deposit amount since it is not identified as being from a donor. I reviewed the monthly bank statements and identified deposited checks which were returned to the payors' banks which totaled $2,115.00. As these returned items were deducted from the defendant's bank account and returned to the payors'

banks, these amounts should not be included in the loss. I calculated the loss amount by subtracting $4,000.00, $330.00, and $2,115.00 from the deposited amount of $66,453.00 which resulted in a loss of $60,008.00.

7. <u>Summary of Bank Accounts</u>

The table below illustrates the total donor deposits, both from personal checks and counterfeit checks, returned deposit items, and calculated loss amounts for each of the defendant's bank accounts.

| Bank Account | Donor Deposits | Returned Deposit Items | Loss Amount |
| --- | --- | --- | --- |
| BB&T (2058) | $62,123.00 | $2,115.00 | $60,008.00 |
| First National (7311) | $77,270.00 | $31,185.00 | $46,085.00 |
| SunTrust (4563) | $2,590.00 | $105.00 | $2,485.00 |
| PNC (5829) | $1,485.00 | $0.00 | $1,485.00 |
| Severn (0717) | $24,850.00 | $8,910.00 | $15,940.00 |
| Wells Fargo (6747) | $17,325.00 | $7,425.00 | $9,900.00 |
| **Total** | **$185,663.00** | **$49,740.00** | **$135,903.00** |

V. **PUBLICATIONS AND PRIOR TESTIMONY**

I have not authored any publications during the previous 10 years.

I have testified twice as an expert, once at trial and once by deposition, during the previous 4 years.

IV. **COMPENSATION**

I am being compensated for my time spent on this matter at the rate of $225.00 per hour.

V. **CONCLUSION**

Based on my review of the records discussed above, it is my opinion that the actual total loss suffered as a result of the defendant's conduct was $135,903.00.

8

_____
Michael M. Dashiell, CPA, CFE, PI

Dated: November 27, 2023